The Hanchulak Law Offices, P.C.
By: Gerald J. Hanchulak, Attorney I.D. 56320
345 Wyoming Avenue, Suite 205
Scranton, PA 18503
Phone: (570) 319-6642

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEVIN CHASE, | : | ELECTRONICALLY FILED |
| | : | NO.: |
| Plaintiff, | : | |
| | : | Judge: |
| v. | : | |
| | : | Civil Action-Law |
| | : | |
| INSTEEL WIRE PRODUCTS COMPANY, | : | |
| | : | JURY TRIAL DEMANDED |
| Defendants. | : | |
| | : | |

COMPLAINT

AND NOW, come the Plaintiff, Kevin Chase, by and through his attorneys, The Hanchulak Law Offices, P.C., and avers as follows:

I. INTRODUCTION

1. Plaintiff initiates this action to seek redress against Insteel Wire Products Company, his former employer, for Race Discrimination, Title VII Retaliation, and violations of other applicable laws.

## II. PARTIES

2. Plaintiff is an adult and competent individual residing at 584 Valley Road, Danville, PA 17821.

3. Defendant, Insteel Wire Products Company is a North Carolina corporation, authorized to do business in the state of Pennsylvania, with a place of business located at 501 Forest Road, Hazle Township, PA 18202.

## III. JURISDICTION &VENUE

3. Defendant is an "employer" within the meaning of the Civil Rights Act of 1964, as amended, as it engaged in an industry affecting interstate commerce and because it maintained fifteen (15) or more employees for each working day in each of twenty or more weeks in the current or preceding calendar year.

4. Pursuant to 28 U.S.C. § 1331 this court has original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States.

5. Venue in the Middle District of Pennsylvania is proper pursuant to 28 U.S.C. § 1391 (b), as the events and/or omissions giving rise to the claims occurred in the District and the Defendant can be served in the District.

6. Plaintiff has exhausted his administrative remedies. His case was dual filed with the PHRC and EEOC and has been pending before the PHRC form more than one year.

## IV. FACTUAL BACKGROUND

7. On December 9, 2019, Defendant hired Plaintiff as an Electronic Technician.

8. Plaintiff is an African American male.

9. When Plaintiff was hired, his immediate supervisor, John Lichtey, was supposed to train Plaintiff to perform the job.

10. Between December 9, 2019, and June 29, 2020, when Plaintiff asked Lichtey for help, Lichtey would simply say "no" or just walk away without saying anything.

11. In or around January 2020, Cole Balliet, race white, was hired as an Electronic Technician on a different shift.

12. Lichtery trained Balliet on everything he needed to perform the job of Electronic Technician.

13. Lichtery's bias was obvious enough that it was pointed out to Plaintiff by a coworker (Kenny from maintenance).

14. In or around February 2020, Scott Stump, Maintenance, stated in Plaintiff's presence that he "really hated that nigger, Colin Kaepernick."

15. Plaintiff told Stump that his language was offensive and inappropriate, to which Stump explained he was not calling Plaintiff a nigger, but emphasized that he just hated that nigger, Colin Kaepernick.

16. Immediately, following the Kaepernick incident, Plaintiff reported the incident to Richard Sanchez, Supervisor, Mel Espinal, Human Resources Manager, and John Burrell, Plant Manager.

17. In or around April 2020, Jaime (Last Name Unknown) a coworker, race white, sent Steffy (Last Name Unknown) a coworker, a text and when Steffy responded, Jaime started to laugh and said, "Hey Kevin, Mark says he's a nigger boy."

18. The repeated use of the word "nigger" was very offensive to Plaintiff.

19. The repeated racially insensitive remarks and constant racism directed at Plaintiff detrimentally affected plaintiff.

3

20. The repeated racially insensitive remarks and constant racism unreasonably interfered with Plaintiff's ability to perform his work and would have interfered with any reasonable person's ability to perform work.

21. Despite Plaintiff's complaints to his coworkers and to management, the above-described behavior continued.

22. On June 25, 2020, John Lichtey, Supervisor, yelled at and belittled Plaintiff while he was working.

23. On that same day, Plaintiff told Lichtey that he was no longer going to accept Lichtery's rude temperament, name calling or belittling, nor would he continue to accept the demeaning behavior of his coworkers.

24. Also on June 25, 2020, Mel Espinal, Human Resources Manager, suspended Plaintiff pending further review.

25. The Defendant's supervisors and managers did not get into shouting matches with white employees or discipline white employees or workplace disagreements.

26. Once Plaintiff complained about the use of the word "nigger" in the workplace management and coworkers stopped being cordial toward him and took on a combative attitude toward him.

27. On June 29, 2020, Mel Espinal, HR Manager, asked Plaintiff if he would be able to continue to do his job, a reference to his ability to work with John Lichtey, Supervisor.

28. That same day, Plaintiff told Defendant that he believed it was the employer's responsibility to provide training and a safe work environment, free of racism.

29. On June 29, 2020, Plaintiff's employment was terminated.

4

30. The stated reason for the termination was management did not feel it was safe for Plaintiff to continue to work there.

### COUNT I
### RACE DISCRIMINATION
### HARASSMENT/HOSTILE WORK ENVIRONMENT

31. Plaintiff incorporates herein by reference paragraphs 1 through 30 above as if the same were set forth fully herein and at length.

32. The use of the word "nigger" and other racially insensitive remarks was pervasive and regular.

33. When Plaintiff complained about racism the employer failed to put a stop to the offensive conduct.

34. In fact, the offensive conduct worsened.

35. The offensive conduct was humiliating to Plaintiff and had the effect of interfering with his work performance.

36. The Plaintiff was detrimentally affected by the offensive conduct.

37. The offensive and humiliating conduct would have detrimentally affected any reasonable person in the Plaintiff's position.

WHEREFORE, Plaintiff respectfully requests judgement in his favor and against Defendant, and award Plaintiff compensatory damages, back pay, front pay, the value of lost benefits, punitive damages, costs, attorney's fees, and such other relief as the Court may deem just, proper, and appropriate in the circumstances of this case.

### COUNT II
### RACE DISCRIMINATION
### TRAINING DENIED

5

38.     Plaintiff incorporates herein by reference paragraphs 1 through 37 above as if the same were set forth fully herein and at length.

39.     When Plaintiff was hired, he was instructed that John Lichtey, his immediate supervisor, would train him for the position of electronic technician.

40.     Whenever Plaintiff asked Lichtey for help, Lichtey would flatly say "no" or he would walk away without saying a word.

41.     In or around January 2020, Cole Balliet, race white, was hired as an electronic technician on another shift.

42.     Balliet received regular instruction and training from Lichtey.

43.     Plaintiff is aware of Balliet's training because the disparity in respect to training was so apparent, it was brought to Plaintiff's attention by his coworker Kenny (last name unknown), a maintenance person.

44.     Lichtey's behavior, as outlined above was motivated by race.

WHEREFORE, Plaintiff respectfully requests judgement in his favor and against Defendant, and award Plaintiff compensatory damages, back pay, front pay, the value of lost benefits, punitive damages, costs, attorney's fees, and such other relief as the Court may deem just, proper, and appropriate in the circumstances of this case.

**COUNT III**
**RACE DISCRIMINATION**
**DISCIPLINARY SUSPENSION**

45.     Plaintiff incorporates herein by reference paragraphs 1 through 44 above as if the same were set forth fully herein and at length.

46.     On June 25, 2020, Plaintiff's supervisor, John Lichtey, was berating and belittling Plaintiff while Plaintiff was trying to work.

6

47. Lichtey did not berate and belittle similarly situated white employees.

48. Plaintiff advised Lichtey that his rude temperament and hostile treatment of Plaintiff was unacceptable.

49. That same day, Mel Espinal, Human Resources Manager, suspended Plaintiff "pending further review."

50. Neither Lichtey nor Espinal treated white employees in the manner described.

51. The Defendant's behavior was motivated by Plaintiff's race.

WHEREFORE, Plaintiff respectfully requests judgement in his favor and against Defendant, and award Plaintiff compensatory damages, back pay, front pay, the value of lost benefits, punitive damages, costs, attorney's fees, and such other relief as the Court may deem just, proper, and appropriate in the circumstances of this case.

**COUNT IV**
**RACE DISCRIMINATION**
**WRONGFUL DISCHARGE**

52. Plaintiff incorporates herein by reference paragraphs 1 through 51 above as if the same were set forth fully herein and at length.

53. On June 29, 2020, Mel Espinal, Human Resource Manager, asked Plaintiff if he would be able to continue to do his job, meaning working in the same area as John Lichtey, Supervisor.

54. Plaintiff asked what the Defendant was going to do to provide a safe workplace, particularly one free of hostility and racism. Plaintiff suggested his coworkers could benefit from sensitivity training.

55. Rather than address the behavior of Plaintiff's coworkers, the Defendant terminated Plaintiff's employment on June 29, 2020.

7

56. The Defendant's termination of Plaintiff's employment was motivated by Plaintiff's race.

WHEREFORE, Plaintiff respectfully requests judgement in his favor and against Defendant, and award Plaintiff compensatory damages, back pay, front pay, the value of lost benefits, punitive damages, costs, attorney's fees, and such other relief as the Court may deem just, proper, and appropriate in the circumstances of this case.

## COUNT VI
## RACE DISCRIMINATION
## RETALIATION

57. Plaintiff incorporates herein by reference paragraphs 1 through 56 above as if the same were set forth fully herein and at length.

58. As set forth above, Plaintiff was engaged in Title VII protected activity when he complained about racism and requested his coworkers be subjected to sensitivity training.

59. On June 29, 2020, the same day Plaintiff made racism specific complaints, the Defendant terminated his employment.

60. The Defendant's termination of Plaintiff's employment was motivated by Plaintiff's race.

WHEREFORE, Plaintiff respectfully requests judgement in his favor and against Defendant, and award Plaintiff compensatory damages, back pay, front pay, the value of lost benefits, punitive damages, costs, attorney's fees, and such other relief as the Court may deem

just, proper, and appropriate in the circumstances of this case.

          Respectfully submitted,

          THE HANCHULAK LAW OFFICES, P.C.

          By:   s/Gerald J. Hanchulak
                Gerald J. Hanchulak, Esq.
                Attorney ID PA 56320
                Attorneys for Plaintiff

345 Wyoming Avenue, Suite 205

Scranton, PA   18503

(570) 319-6642

ghanchulak@hanchulaklaw.com